UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NUMBER 3:25CR0030 (SVN) |
| vs. | : | |
| ADAM IZA | : | SEPTEMBER 6, 2026 |

**DEFENDANT'S REPLY MEMORANDUM RE: GOVERNMENT'S ATTEMPT TO ATTRIBUTE THE "C" TELEGRAM ACCOUNT TO IZA**

## I. Introduction

The government's evidence does not establish by a preponderance standard that Iza operated or controlled the Telegram account identified as "C." Instead, the government repeatedly treats association with "C," receipt of material related to "C," and unidentified Telegram "interactions" as though each were forensic proof that Iza was "C." They are not.

The central issue is not whether Iza was involved in the broader conspiracy. Iza has acknowledged his involvement and does not dispute that he communicated with individuals involved in the operation, including through Telegram. But that communication ended once the St. Louis group departed Connecticut. The issue is narrower and more specific: whether the government has established that Iza was also the person who operated the separate Telegram account identified as "C."

The government has not done so. It has provided no forensic evidence from Iza's device showing that he controlled "C," no Telegram subscriber records linking "C" to Iza, and no direct

evidence, such as a telephone number, email address, IP address, voice message, video call, or other identifying material, connecting Iza to the unique Telegram User ID associated with "C." Instead, the government relies on:

1. A contact entry in Schwab's iCloud entered 6-days after the kidnapping;
2. Unidentified Telegram "interactions" involving Iza's device;
3. Screenshots and photographs received by Iza; and
4. Speculative inferences drawn from the timing and subject matter of those materials.

When examined individually and in context, none of these items authenticates "C" as Iza. When combined, they establish only that Iza was involved in the operation and received or possessed information concerning it, facts consistent with his admitted role as "Kusha," but not proof that he was also "C."

## II. Proper Authentication Requires Attribution of the Unique Telegram User ID

The government's theory relies circumstantially on equating the display name "C" with Iza. That is not a reliable method of authenticating a Telegram account. A Telegram display name can be changed. An account identified by one display name can later appear under another. The relevant identifying information is the account's unique User ID, not merely the name displayed on a screenshot or contact list. Thus, an account displayed as "C" may later be displayed as "D," while remaining identifiable through its unchanged User ID.

Accordingly, to authenticate "C" as Iza, the government must connect the unique User ID associated with the "C" account to Iza. That could be done, for example, through:

- Telegram records linking the "C" User ID to Iza's telephone number, email address, or IP address;
- Direct communications from "C" containing identifying information attributable to Iza; or

- Other reliable forensic evidence establishing that Iza controlled that specific account.

The government has provided none of these things. A screenshot showing a display name, a third party's characterization of an account, or a contact entry created after the events does not establish that the unique User ID belonged to Iza. The government's approach effectively asks the Court to assume the very fact it must prove: that the account displayed as "C" was operated by Iza. That is speculation, not authentication.

## III. Screenshots & Photographs Received by Iza Do Not Authenticate Him as "C"

The government relies heavily on a collection of screenshots and photographs found on Iza's phone. The government argues that because some of these materials depict activity involving "C," Iza must have been "C." That inference does not follow.

A person's possession of a screenshot does not establish that the person authored, controlled, or participated in the communication depicted in the screenshot. It establishes, at most, that the person received or retained an image.

In this case, the evidence shows that individuals throughout the conspiracy shared screenshots, photographs, and operational information with one another.

Iza received material from multiple participants, including Schwab and Faiq. The fact that he received some material related to "C" is therefore consistent with his admitted role in the operation and does not distinguish him as the operator of "C."

### A. The screenshots depicting Borrero's Telegram activity

The government relies on a screenshot showing an incoming notification from Borrero's Telegram account. The evidence indicates that the screenshot was sent to Iza, and that Iza saved

it when the notification appeared on his phone. That does not show that Iza operated "C." It shows that a screenshot concerning Borrero's Telegram activity was sent to Iza.

The same is true of the screenshot showing an outgoing call to Borrero's Telegram account. The image depicts multiple Telegram chats open on someone's phone, including a Borrero chat showing an incoming call. The screenshot's existence on Iza's device does not establish that the device displaying the underlying Telegram account belonged to Iza, much less that Iza was the person operating "C."

**B. The screenshot depicting a conversation between Diaz and "C"**

The government also relies on a screenshot showing a portion of a Telegram conversation between Diaz and "C." Again, the screenshot was received by Iza. It does not establish that Iza authored the conversation, controlled the account, or was the person whose device was depicted. Indeed, the inference urged by the government is counterintuitive. If Iza himself was "C," why would he need to receive screenshots showing communications or events that he allegedly personally conducted? The more natural inference is that Iza was being kept informed by other members of the conspiracy.

The evidence concerning "Kusha" illustrates the distinction. The communications associated with "Kusha" were forensically preserved on Iza's device. The government does not need screenshots or unidentified interactions to argue that Iza was "Kusha." By contrast, no comparable forensic evidence from Iza's device shows that he operated "C." The government's reliance on screenshots underscores the absence of direct evidence tying Iza to that account.

**C. The broader collection of photographs and screenshots provides critical context**

The government isolates the "C" related images while minimizing the many other screenshots and photographs found on Iza's phone. But those materials demonstrate that Iza routinely received operational information from multiple people and concerning multiple aspects of the conspiracy.

The evidence includes:

- A photograph of Angel Borrero;
- Multiple photographs of the Chetals and their Lamborghini;
- A photograph of the Roxbury Airbnb;
- Flight itinerary information for the St. Louis group;
- Communications with the Airbnb landlord;
- Information concerning the Honda Civic rental;
- Login information for the Turo cargo van;
- Photographs of the St. Louis group in the basement of the Roxbury residence; and
- Other photographs and screenshots concerning the operation.

Iza did not book the Airbnb, communicate with the Airbnb landlord, arrange the Honda Civic, or book the Turo van. Yet screenshots and other images concerning those matters were found on his phone. Their presence does not mean that Iza was the person who performed each underlying act. It means that information was circulated among participants.

The same reasoning applies to the "C" related screenshots. If possession of a screenshot made the recipient the person depicted in it, the government's theory would imply that Iza was not only "C," but also the person who booked the Airbnb, communicated with the landlord,

arranged the vehicles, purchased the flights, and conducted the surveillance. The government does not make those claims because the evidence plainly does not support them.

The broader record establishes that Iza had screenshots and photographs related to nearly every aspect of the conspiracy. The "C" related images are therefore not distinctive evidence of identity. They are part of the same general pattern of information-sharing.

## IV. The Schwab iCloud Contact Does Not Authenticate "C" as Iza

The government relies on a contact entry in Schwab's iCloud that purportedly attributes "C" to Iza. That item does not establish authenticity or control of the "C" account.

The contact was created six days after the kidnapping, during a period in which Schwab had an apparent interest in distancing himself from the conspiracy. Anyone could create or alter a contact entry and label it with any name. A post-event contact entry is not a Telegram subscriber record, a forensic extraction, or proof that the unique "C" User ID belonged to Iza.

The government has also suggested that the "C" account communicated with one of Iza's associates in Los Angeles. That fact does not authenticate "C" as Iza. At most, it shows that "C" communicated with someone associated with Iza, an observation consistent with a conspiracy involving numerous participants and multiple channels of communication.

Likewise, a screenshot involving Iza's former girlfriend does not solve the authentication problem. The relevant Telegram display name is not fully shown. The visible portion begins with the letter "C," but the account name was "C T I," which refers to "Crypto Trading Institute," a name associated with Iza's cryptocurrency business. The screenshot does not identify the account's unique User ID and does not establish that the account was the "C" account involved in the charged conduct.

The government is therefore relying on a partial display name while disregarding the distinction between a display name and the unique User ID. That is precisely the attribution error the Court should avoid.

## V. The Government Misstates What Schwab Told Diaz and Borrero

The government asserts that Diaz and Borrero were told that Schwab's associate coordinating the scheme was named "Adam." However, the under-seal proffer interviews provided to the defense indicate the "hacker" who communicated with Borrero and Diaz was identified as "CAM", not "Adam." The Court should evaluate the actual statements and not rely on the government's interpretation of the evidence that supports its attribution theory.

## VI. "C" and "Kusha" Were Separate Telegram Accounts, Not Merely Two Display Names

The government suggests that Iza could have been both "C" and "Kusha" because a single Telegram account can use multiple display names. That premise does not fit the evidence. "C" and "Kusha" were not simply two names used by one account. They were separate Telegram accounts with separate User IDs that operated and communicated during the same period.

The government's theory therefore requires more than showing that one Telegram account can change its display name. It requires proof that Iza controlled both separate accounts. The government has forensic evidence supporting the attribution of "Kusha" to Iza. However, it does not have comparable evidence attributing "C" to him. The distinction matters. The government cannot transform two separate accounts into one person by relying on the general proposition that Telegram display names may change.

## VII. The Government's Theory Requires Treating Iza as Two People Without Evidence

The government's theory is not simply that Iza participated in the conspiracy. That point is undisputed. Its theory is that Iza operated as "Kusha" while also operating as "C," a separate account communicating with another group during the same period.

That theory is possible in the abstract, but possibility is not proof. The government must provide evidence showing that Iza was both individuals. Instead, it relies on the fact that he received information generated by or concerning "C." That proves association with "C," not identity with "C."

The more coherent interpretation of the evidence is that different participants performed different roles:

- Schwab coordinated between the St. Louis and Miami groups and managed logistics;
- The Miami group conducted the kidnapping;
- "C" directed or communicated with the Miami group;
- The St. Louis group considered a robbery but ultimately exited;
- Iza, operating as "Kusha," directed or communicated with the St. Louis group; and
- Information, screenshots, and photographs were shared among the participants.

Under that account, Iza could receive screenshots from "C," Schwab, and others because he was involved in the operation and was being kept informed. That explanation is not only possible; it is consistent with the evidence recovered from his device.

The government's contrary theory becomes illogical when it treats every item received by Iza as proof that he personally created or performed the underlying act. Receipt of an image does not make the recipient the photographer. Receipt of a screenshot does not make the recipient the

author of the depicted communication. Receipt of logistics information does not make the recipient the person who arranged the logistics.

### VIII. The Evidence Is Consistent With Iza's Admitted Role as "Kusha"

There is no dispute that Iza was involved in the conspiracy. He has admitted that involvement. He does not dispute that he communicated with participants on Telegram or that he possessed material related to the operation.

But the evidence is consistent with Iza's role as "Kusha" without requiring the additional conclusion that he was "C." As "Kusha," Iza communicated with the St. Louis group, interacted with his brother and his brother's associates, and received information from other participants. He did not need to be "C" to possess screenshots or photographs relating to "C." He needed only to be part of a conspiracy in which participants shared information.

This distinction is important at sentencing. The government cannot use evidence proving conduct that Iza has already admitted to establish an additional identity and then use that additional identity to impose enhancements unsupported by the record. Evidence of general participation is not evidence of every participant's conduct, and evidence of association with "C" is not proof that Iza was "C."

The government's approach also risks sweeping in allegations concerning other defendants without a logical basis. For example, the government seeks to attribute serious conduct and enhancements to Faiq despite evidence that he left Connecticut before the kidnapping. The same lack of individualized reasoning appears in the attempt to attribute "C" to Iza. The Court should require the government to connect each enhancement to evidence concerning Iza's own conduct, rather than relying on generalized conspiracy evidence.

## IX. The Government's Failure to Investigate or Present Counter-Evidence Cannot Be Used Against Iza

The government was aware of Cam Cureton and his apparent ties to Schwab and potential ties to the kidnapping. Yet rather than resolve the identity question through direct evidence, it asks the Court to infer that Iza was "Cam" from circumstantial material that is equally, or more consistent with information-sharing among conspirators.

The government also appears to disregard evidence that cuts against its theory. The absence of "C" related Telegram communications forensically preserved on Iza's phone is significant. So is the presence of preserved "Kusha" communications. The government cannot rely on the screenshots that support its theory while ignoring the surrounding evidence demonstrating that Iza routinely received materials from other participants.

When the evidence is considered as a whole, the absence of forensic evidence tying Iza to "C" is not a minor gap. It is the central feature of the government's proof.

## X. The Court Should Not Allow a "Laundry List" of Weak Circumstances to Substitute or Proof

The government's presentation creates the appearance of substantial evidence by grouping together every item found on Iza's phone: photographs, screenshots, timing information, and contact entries. But quantity does not cure the absence of authentication.

The relevant question is not how many items the government identifies. It is whether any of those items reliably connects Iza to the unique User ID of "C." None does.

Once the evidence is separated into two categories, the issue becomes clear.

<u>Evidence showing Iza's involvement in the conspiracy</u>:

- Communications associated with "Kusha";

- Communications with members of the St. Louis group;
- Photographs and screenshots shared among conspirators;
- Operational information received from other participants; and
- Some unidentified Telegram-related activity involving his device.

Evidence purporting to show that Iza was "C":

- No forensic account attribution;
- No subscriber record;
- No linked telephone number, email, or IP address;
- No direct, identifying communication;
- No recovered "C" messages on Iza's phone; and
- No reliable evidence that the "C" UserID was controlled by Iza.

The first category is substantial but largely undisputed. The second category is unsupported by direct or forensic evidence.

## XI. Conclusion

The government has not established that Iza operated or controlled the Telegram account identified as "C." Its evidence shows that Iza was involved in the conspiracy, that he operated or communicated through "Kusha," and that he received screenshots, photographs, and other information from multiple participants. Those facts are consistent with Iza's admitted role.

They do not establish that he was also "C."

The government's attribution theory depends on repeatedly treating association as identity, screenshots as authorship, application "interactions" as messages, display names as unique

account identifiers, and post-event contact entries as authentication evidence. None of those assumptions is supported by the forensic record.

The Court should therefore reject the government's attempt to attribute "C" to Iza and should not rely on that unsupported attribution to impose additional sentencing enhancements or otherwise increase Iza's punishment. The evidence supports the conclusion that Iza was involved in the conspiracy as "Kusha." It does not support the government's claim that he was two participants, "Kusha" and "C", without reliable proof connecting him to the unique User ID associated with "C".

Respectfully submitted,
The Defendant - Adam Iza

By: */s/ William H. Paetzold*

William H. Paetzold
Paetzold Law Group
2230 Main Street
Glastonbury, CT 06033
Tel. (860) 657-2230
Federal Bar No.: ct10074
bill@paetzoldlawgroup.com

**CERTIFICATION**

This is to certify that the foregoing was filed electronically on September 7, 2026 to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

*/s/ William H. Paetzold*
William H. Paetzold